NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| Robin C., | : | |
| | : | |
| Plaintiff, | : | Civil No. 20-6778 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Robin C.'s Appeal (ECF No. 1) from

the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability

Insurance and Supplemental Security Income benefits. For the reasons set forth below, the

Commissioner's decision is **AFFIRMED.**

## I.    PROCEDURAL HISTORY[1]

In September 2012, Plaintiff filed an application seeking Social Security Disability

Insurance and Supplemental Security Income benefits, alleging an onset of disability on August

6, 2008. (ECF No. 1, "Compl."); (R. at 330–84). The application was denied on March 31, 2014,

(R. at 141), and denied again upon reconsideration on August 12, 2014, (R. at 213–17). Plaintiff

then requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 219–20). On

November 29, 2016, a hearing was held before ALJ Karen Shelton. (R. at 48–100, 234). On

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the
issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are
set forth in a separate section below.

March 21, 2017, ALJ Shelton issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 170–97). Plaintiff appealed ALJ Shelton's opinion to the Appeals Council on May 24, 2017. (R. at 264–66). The Appeals Council remanded Plaintiff's case on September 19, 2017. (R. at 202–06). Another hearing was held in this matter before ALJ Shelton on May 3, 2018. (R. at 102–140). On November 29, 2018, ALJ Shelton issued a decision finding that Plaintiff was not disabled. (R. at 7–35). On January 29, 2019, Plaintiff filed a request for review with the Appeals Council, which was denied on March 30, 2020. (R. at 1–6). ALJ Shelton's November 2019 decision became the final decision of the Commissioner of Social Security. On June 3, 2020, Plaintiff appealed the matter to this Court. (Compl.).

## II.    LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the

Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B.  Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the ALJ's factual findings under a substantial evidence standard. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Monsour Med. CR. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See*, *e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir.1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

This Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not consider the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114).

## III.   FACTUAL BACKGROUND

### A.  Plaintiff's History

Plaintiff Robin C. ("Plaintiff") was born on January 9, 1961 and was 47 years old on the alleged onset date of August 6, 2008. (R. at 34, 330). She completed a four-year college degree and some credits for a master's program. (R. at 60–61, 376). At the time of the 2016 hearing, Plaintiff lived at home with her husband. (R. at 57). Plaintiff can drive short distances, (R. at 59–60), go to the grocery store, (R. at 60), walk her dogs, (R. at 80), run errands, (R. at 85), garden (R. at 86), and cook, (R. at 86). She exercises two to three days per week, using the treadmill and doing strength training. (R. at 85). Plaintiff alleges disability based on executive functioning disorder, stroke, memory and cognitive impairments, endometrioid cancer, and disordered thought process. (R. at 375).

In 2000, Plaintiff experienced a stroke and was hospitalized. (R. at 463–68, 544). She testified that she has no feeling in the right side of her body and uses a left foot pedal to drive as a result. (R. at 130, 135). Then in April 2008, Plaintiff was diagnosed with cancer. (R. at 65,

654–58). She underwent surgery and chemotherapy. (R. at 66, 644–49, 659–71). Her cancer has been in remission since 2008. (R. at 67).

Plaintiff was fired from her position as a psychiatric screener in 2008 shortly after returning from chemotherapy because she failed to get a signed release from a patient. (R. at 58, 64). She collected unemployment benefits in 2008 for roughly two years, (R. at 58–59), while looking for new employment, (R. at 68–71).

Plaintiff was then hired by Crossmark to work as a demonstrator at BJ's Warehouse in 2014. (R. at 70). Plaintiff worked 15–20 hours a week for roughly a year and a half, during which time she felt exhausted. (R. at 70–71). She was stopped working in October 2015 when BJ's terminated Crossmark. (R. at 71–72).

Following her termination, Plaintiff testified that she has continually looked for part-time work. (R. at 72). She states that she is limited to part-time work due to her fatigue, which she believes derives from her 2008 chemotherapy. (R. at 72–74). Plaintiff reported needing to take one or two breaks, in addition to her regularly scheduled break, due to fatigue while working part-time. (R. at 88). Generally, these unscheduled breaks lasted 15 to 20 minutes each but were sometimes longer. (R. at 88). To handle her fatigue when she is at home, Plaintiff will sit or lay down. (R. at 91).

Plaintiff also complains of other physical impairments. She reported severe memory problems, which started after her stroke and worsened after her chemotherapy treatment. (R. at 75–78). Plaintiff also stated that she had to take more bathroom breaks than usual due to the lasting effects of her surgery (R. at 72). Moreover, she testified that her fine motor skills are impaired, resulting in difficulty writing and typing. (R. at 76–77, 131). Plaintiff can, however, open a door, work a remote control, and execute basic functions on a cell phone. (R. at 78–79).

Plaintiff also stated that she experiences pain in her left foot due to bone spurs if she stands for more than one hour, requiring her to elevate her feet. (R. at 121). Plaintiff underwent surgery for bone spurs in 2013. (R. at 80).

### B. Medical & Lay Opinion Evidence

#### i. Dr. Tracy

Dr. Joseph Tracy conducted a neuropsychological evaluation of Plaintiff in July 2014 in connection with her application for disability benefits. (R. at 796–802). Dr. Tracy found that Plaintiff had a bilateral impairment related to her motor dexterity and her psychomotor speed was below average in her right hand. (R. at 800). Dr. Tracy diagnosed Plaintiff with Dysthymic Disorder and mild cognitive impairment, which reflected specific deficits in word retrieval and verbal memory. (R. at 801). He found additional deficits in information processing speed and mental efficiency, which were diminished by Plaintiff's depression. (R. at 801). Ultimately, Dr. Tracy concluded that:

> Based upon my clinical interview, neurobehavioral status exam, and the psychological and neurocognitive test data, I conclude that the above disorders do remove and precludes her ability to work at prior levels, levels that she would otherwise be able to obtain based on her age, education, and experience. Disability status is warranted.

(R. at 801).

#### ii. Dr. Libon

Dr. David Libon conducted a neuropsychological evaluation of Plaintiff in September 2009. (R. at 473–78). In his evaluation, Dr. Libon noted Plaintiff was "positive for a debilitating dysexecutive syndrome" and "presents with significant cognitive disabilities." (R. at 477). Ultimately, Dr. Libon diagnosed Plaintiff with "cognitive impairment associated with prior CVA and chemotherapy" and recommended that "a disability application … be considered as the

patient is unable to return to her former occupation." (R. at 478). Dr. Libon also found that

Plaintiff had exhibited dysgraphia stemming from "motor control problems." (R. at 476–77).

### iii.  Dr. Morgan

Dr. Mark Morgan is Plaintiff's oncologist. (R. at 605–25, 849–82). He has treated

Plaintiff since 2008. (R. at 605–25, 637, 646). Dr. Morgan's treatment notes throughout the

relevant time period repeatedly document "cognitive dysfunction" and Plaintiff's complaints of

"memory problems" including "severe memory loss since completing her chemotherapy." (R. at

605–25, 637). Treatment notes also indicate that Plaintiff was "very active in the gym" during

this time. (R. at 638, 642). Dr. Morgan completed a medical source statement for Plaintiff in

2014. (R. at 789–94). In the statement, Dr. Morgan indicated that Plaintiff would typically

require supine rest for at least a total of one and a half to two hours a day, that the times Plaintiff

would need rest was unpredictable, and that Plaintiff would likely be "off task" 25% or more of

the time in a typical workday. (R. at 791). He also indicated that Plaintiff's fatigue would prevent

her from performing normal, full-time work more than 3-4 days per month and that she would

need to be absent more than four days per month as a result of her impairments. (R. at 793, 794).

### iv.  Dr. Aliferova

Dr. Tatyana Aliferova has been Plaintiff's primary care physician since 2010. (R. at 721,

845). Dr. Aliferova provided treatment records and, in 2016, a medical source statement for the

ALJ's consideration in this case. (R. at 721, 831–44, 845–48). In her medical source statement,

Dr. Aliferova indicated that Plaintiff would not need supine rest for at least one and a half to two

hours a day. (R. at 847). She did indicate, however, that Plaintiff would likely be off task 25% or

more of the time in a typical workday and would have "good days and bad days[.]" (R. at 847).

### v.  Dr. Wagner

Dr. Mark Wagner evaluated on Plaintiff in October 2016. (R. at 414–35). For the evaluation, Dr. Wagner reviewed medical records from Dr. Libon, Dr. Coffey, Dr. Morgan, and Dr. Tracy. (R. at 414, 422–26). Dr. Wagner noted that Plaintiff "is continuing to experience some neurocognitive deficits at this time[,]" (R. at 432), and found "significant limitations" regarding Plaintiff's contextual verbal memory, consistent with Dr. Libon, Dr. Tracy and Dr. Coffey's evaluations, (R. at 434). Dr. Wagner concluded that "[t]he neurocognitive and emotional factors that [Plaintiff] now presents with appear interwoven….perpetuat[ing] the continuation of difficulties that [she] is experiencing and impedes her ability to resume meaningful employment." (*Id.*). Dr. Wagner stated that he believed his findings "are representative of [Plaintiff's] functional limitations going back to 2009." (*Id.*).

### vi.   Dr. Knod

Plaintiff was evaluated by Dr. George Knod for purposes of her disability claim on April 24, 2018. (R. at 883–96). Dr. Knod performed a functional analysis based on a physical examination of Plaintiff and review of Plaintiff's medical records, specifically Dr. Aliferova's 2016 medical source statement and Dr. Morgan's 2014 medical source statement. (R. at 883–87). In his physical examination of Plaintiff, Dr. Knod noted that Plaintiff's grip strength on the right was "consistently decreased as compared to the left." (R. at 886). Dr. Knod concluded that "[t]he combination of neurological deficits from [Plaintiff's] prior strike and the side effects of chemotherapy … would limit her ability to work in a competitive work environment…." (R. at 887). For support, he cited to Dr. Morgan's 2014 opinion, which supported "the onset to 2008 following surgery and chemotherapy." (R. at 887). In addition, Dr. Knod found "[c]hronic fatigue also limits [Plaintiff's] functional abilities"; apparently citing directly from Dr. Morgan's

opinion he further noted that Plaintiff's "need for rest is unpredictable" and would "prevent her from performing normal fulltime work activities on a frequent … basis." (R. at 887).

### vii.   Lay Statements

Plaintiff's sister and Plaintiff's longtime friend submitted letters on Plaintiff's behalf. (R. at 412–13, 436–37). Plaintiff's sister has observed that Plaintiff is constantly fatigued, has limited use of her right hand, and experiences severe deficits in short- and long-term memory. (R. at 412). Further, Plaintiff's sister notes that Plaintiff used to be a talented painter but can no longer perform this task due to a loss of feeling in the right side of her body. (R. at 412–13). Plaintiff's friend, who has known Plaintiff for nearly 40 years, has observed that since Plaintiff's stroke and chemotherapy, Plaintiff loses focus often, can no longer drive to unfamiliar areas, and struggles to complete mundane tasks. (R. at 436–37).

### C.  The ALJ's Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date, August 6, 2008, through her date last insured, December 31, 2015. (R. at 14).   At Step Two, the ALJ found that Plaintiff had the following severe impairments: Attention Deficit Disorder/Attention Deficit Hyperactivity Disorder, learning disorder, and organic mental disorder (R. at 14). The ALJ found that Plaintiff's prior cancer, cerebrovascular accident (CVA), small bowel obstruction, degenerative disc disease of the cervical spine, osteoarthritis, and degenerative joint disease were non-severe because there was "minimal clinical evidence in the record to corroborate or support any finding of a significant vocational impact related to these conditions" prior to the date last insured. (R. at 14–15). At Step Three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15–19).

The ALJ then constructed Plaintiff's residual functional capacity ("RFC"), finding that, during the relevant period,

> [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The [Plaintiff] was able to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, workplace changes. [Plaintiff] could work for two hours at one time before needing a break. She could only have frequent contact with supervisors and co-workers. [Plaintiff] could also have frequent contact with the public, provided it was brief and superficial in nature.

(R. at 19–33).

When formulating the RFC, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were "not entirely consistent" with the record. (R. at 32).

In reaching this conclusion, the ALJ discussed Plaintiff's relevant medical history. For example, the ALJ noted that Plaintiff had suffered a stroke (CVA) in 2000 and was hospitalized for two days, after which she returned to work at substantial gainful activity levels until 2008 (R. at 23). She mentioned Plaintiff cancer diagnosis and subsequent treatment, and Plaintiff's testimony that her memory had been damaged by the chemotherapy. (R. at 21). The ALJ also recounted Plaintiff's activities of daily living, including going to the gym, doing errands, making dinner, and cleaning the house. (R. at 20).

The ALJ determined Plaintiff's physical impairments were "non-severe" given the recency of their development relative to Plaintiff's last date insured. (R. at 32). The ALJ also concluded that the extent of Plaintiff's complaints regarding chronic fatigue and memory problems were "primarily unsupported" by evidence in the record. (R. at 32).

10

Further, the ALJ considered the medical opinion evidence that was submitted on the record. The ALJ afforded "some weight" to Dr. Tracy's opinion in support of a finding that Plaintiff could perform unskilled work. (R. at 28). However, the ALJ rejected Dr. Tracy's opinion that "disability status is warranted[,]" because disability determinations are reserved for the Commissioner and this opinion was based on the doctor's conclusion that Plaintiff could not return to skilled jobs. (*Id.*). The ALJ partially rejected Dr. Libon's opinion that for similar reasons. (R. 24–25). As with Dr. Tracy, the ALJ assigned some weight to Dr. Libon's opinion to the extent his findings supported a finding that Plaintiff was limited to unskilled work. (R. at 25).

The ALJ rejected Dr. Morgan's opinion that Plaintiff needed significant supine rest, noting that Dr. Morgan's opinion appeared to be based solely on Plaintiff's complaints. (R. at 29) The ALJ explained that no examinations or other objective evidence supported Dr. Morgan's conclusions, which were also inconsistent with Plaintiff's daily activities. (*Id.*).

Likewise, the ALJ discounted Dr. Aliferova's opinion because it was contrary to evidence in the record and appeared in a "checklist-style form" that lacked accompanying explanations. (R. at 30). Further, the ALJ noted that Dr. Aliferova's treatment notes "contain routine medical care" and offered no support for her conclusions. (*Id.*). Last, the ALJ found that Plaintiff's testimony and daily activities further undermined Dr. Aliferova's opinion. (*Id.*)

The ALJ deemed the opinions of Dr. Wagner and Dr. Knod unpersuasive because they examined Plaintiff after her date last insured, in 2016 and 2018 respectively. (R. at 30–31). The ALJ noted that Dr. Knod did not review any objective medical evidence from the relevant time period in forming his opinion, only a medical source statement. (R. at 31). The ALJ also discounted Dr. Wagner's opinion because his conclusions were vague, and he did not offer "concrete and explicit functional limitations for work activity." (R. at 30).

11

Finally, the ALJ also considered statements from Plaintiff's sister and friend. (R. at 30–31). The ALJ ultimately assigned these statements little weight, finding they were subjective, based on casual observation, and lacked substantial support from objective findings. (R. at 30–31). The ALJ also found that the statements were inconsistent with the record, as well as with Plaintiff's own testimony and daily activities. (R. at 31).

At Step Four, the ALJ concluded that, based on Plaintiff's RFC, Plaintiff was unable to return to her past relevant work as a case worker or demonstrator. (R. at 33). At Step Five, based on the above analysis and the testimony of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, RFC, education, and work experience, including marker, laundry laborer, and addresser. (R. at 34–35). Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between her alleged disability onset date and her date last insured. (R. at 35).

## IV.   DISCUSSION

Plaintiff raises four challenges on appeal. (ECF No. 12, "Pl. Br." 11–31). Plaintiff contends that the ALJ erred: (1) in finding Plaintiff's physical impairments to be non-severe, (*id.* at 11–14); (2) in failing to include Plaintiff's physical impairments in the RFC calculation, (*id.* at 14–16); (3) in her consideration of the opinion evidence and non-contemporaneous evidence, (*id.* at 17–29); and (4) in minimizing the impact of Plaintiff's stroke, (*id.* at 29–31). The Court begins with Plaintiff's first challenge.

### A.  Plaintiff's Physical Impairments

#### i.  Step Two

Plaintiff argues that the ALJ erred by finding that Plaintiff's physical impairments were non-severe at Step Two. (Pl. Br. 11–14). Plaintiff contends that she suffers from the following

medically determinable, physical impairments: "uterine/endometrioid cancer, cerebrovascular accident (CVA), small bowel obstruction, left knee degenerative joint disease, and osteoporosis of the lumbar spine and hips" as well as impairment of her fine motor skills. (Pl. Br. 12–13).

We need not decide this issue, however, because even if the ALJ erred in her determination that Plaintiff's physical impairments were non-severe, the error was harmless. An ALJ's error in evaluating the severity of a medically determinable impairment at Step Two is generally harmless if the ALJ recognizes at least one severe impairment and continues with the sequential evaluation.[2] *See Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome. And without more, [the claimant] provides no valid basis for remand."); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))).

Here, the ALJ concluded that several of Plaintiff's mental impairments—attention deficit disorder/attention deficit hyperactivity disorder, learning disorder, and organic mental disorder—met the requisite severity threshold. (R. at 14). Therefore, the ALJ's Step Two finding that Plaintiff's physical impairments were non-severe does not warrant remand.[3]

### ii.  Step Four

---

[2] The ALJ must, however, account for the omitted impairment in formulating the RFC and the error must "not otherwise affect the outcome of the case." *Friday v. Comm'r of Soc. Sec.*, No. 1:20-CV-04504, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021) (citations omitted).

[3] Plaintiff effectively concedes this point in her brief, noting "while we argue that the ALJ erred at Step Two, the harm is that the rejection of any non-psychiatric impairments at Step Two was followed by the ALJ failing to consider these impairments at the remaining steps ot [*sic*] the sequential evaluation process." (Pl. Br. 14).

The question now becomes whether the ALJ sufficiently accounted for Plaintiff's physical impairments in the RFC. Plaintiff correctly notes that SSR 96-8p requires an ALJ consider all of a claimant's impairments when developing the RFC, including those that are not severe. *See* SSR 96-8p; 20 C.F.R. § 404.1545(a)(2).

Plaintiff argues that the ALJ erred in failing to include fatigue-related limitations in the RFC. (Pl. Br. 16). There are two main pieces of evidence in the record that could support a fatigue limitation: (1) Plaintiff's testimony regarding her fatigue, (R. at 72–75, 88); and (2) Dr. Morgan's 2014 Medical Source Statement, which indicated that Plaintiff would require one and half to two hours of supine rest a day and that fatigue would prevent Plaintiff from performing normal, full-time work more than 3-4 days per month. (R. at 791, 793–94).

For the reasons expressed below, we find that the ALJ did not err in discounting Dr. Morgan's opinion regarding Plaintiff's fatigue. With regard to Plaintiff's testimony, Plaintiff reported needing to take one or two breaks—generally lasting 15-20 minutes each—in addition to her regularly scheduled break due to fatigue while working part-time. (R. at 88). The ALJ considered this testimony when constructing the RFC. (R. at 22). Consistent with this testimony, the ALJ noted in the RFC that "claimant could work for two hours at one time before needing a break." (R. at 19). Plaintiff has not shown that this restriction is insufficient to account for Plaintiff's fatigue. To the extent Plaintiff intends to argue greater fatigue limitations are warranted, Plaintiff does not identify additional fatigue-related evidence the ALJ overlooked in constructing the RFC. Contrary to Plaintiff's assertion, Dr. Morgan's treatment notes do not indicate Plaintiff complained of fatigue prior to one 2016 appointment. (R. at 871). Indeed, the ALJ acknowledged in her decision that among Plaintiff's chief complaints is symptoms of

chronic fatigue but found that "the extent of [Plaintiff's] allegations and limitations are primarily unsupported." (R. at 32). Therefore, remand is not warranted on this issue.

Aside from fatigue, Plaintiff does not indicate what, if any, functional limitations stem from her physical impairments that the ALJ should have accounted for in the RFC. Instead, Plaintiff puts forth a general argument that, given her medical history, she is clearly unable to lift objects weighing more than 100 pounds or frequently lift objects weighing more than 50 pounds as would be required for heavy work. (Pl. Br. 15) (citing 20 C.F.R. § 404.1567); (ECF No. 14, "Pl. Reply" 6). But it is the plaintiff who bears the burden at Step Four. *See Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Plaintiff points to no evidence in the record that the ALJ overlooked suggesting that Plaintiff is limited in the amount of weight she can lift. On the contrary, Plaintiff herself testified that she lifts weights at the gym and can lift groceries. (R. at 85, 133). It seems, then, that Plaintiff is arguing that the ALJ should have inferred a lifting limitation based only on Plaintiff's status as a stroke and cancer survivor.[4] Without more, we cannot conclude that the ALJ erred in failing to include a lifting limitation in the RFC. *See Edghill v. Saul*, No. 2:20-CV-461, 2021 WL 2434046, at *8 (D.N.J. June 15, 2021) ("[T]he ALJ need include only 'credibly established' limitations in the RFC." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005))).

**B.  Opinion Evidence**

Plaintiff next asserts that the ALJ erred in her evaluation of the medical Opinion evidence provided by Dr. Tracy, Dr, Libon, Dr. Morgan, Dr. Aliferova, Dr. Wagner, and Dr. Knod and the

---

[4] Even assuming that the ALJ erred in determining Plaintiff could perform heavy work, Plaintiff still fails to show that this error was harmful. The ALJ ultimately concluded that Plaintiff could perform occupations like Addresser, Marker, and Laundry Laborer, which require only sedentary, light, and medium exertional levels. (R at 34–35). Plaintiff makes no argument in her brief that she is unable to perform the exertional requirements of these jobs.

lay evidence provided by Plaintiff's sister and friend. (Pl. Br. 17–29). The Court will address each argument in turn.

The ALJ must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When determining a claimant's ability to work, the ALJ must consider all relevant evidence, including the medical records, medical source opinions, and the individual's testimony. 20 C.F.R. § 404.1545(a). The ALJ has a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927. The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.*

### i. Dr. Tracy

Plaintiff argues that the ALJ erred in her evaluation of the opinion of Dr. Tracy, (Pl. Br. 17), a neuropsychologist who examined Plaintiff in connection with her application for social security benefits, (R. at 796). Plaintiff's arguments on this issue are jumbled. As far as the Court can discern, Plaintiff claims that the ALJ erred by rejecting Dr. Tracy's opinion just because it addressed the ultimate issue of Plaintiff's disability status and asserts that the ALJ should have recontacted Dr. Tracy to seek additional clarification.[5] (Pl. Br. 17–18).

Plaintiff's contention that the ALJ rejected Dr. Tracy's opinion *solely* because it touched on the ultimate issue of disability is meritless. (Pl. Br. 18). The ALJ clearly discounted only Dr.

---

[5] Plaintiff also suggests that Dr. Tracy's opinion that "disability status is warranted" was meant to "touch on [Plaintiff's] persistence at competitive work." (Pl. Br. 18). This argument is unavailing. Dr. Tracy stated that "the above disorders do remove and preclude [Plaintiff's] ability to work at prior levels, levels that she would otherwise be able to obtain based on her training, education, and experience. Disability status is warranted." (R. at 801). It is clear that Dr. Tracy was opining only on Plaintiff's ability to perform her past work or comparable work based on her professional background. It would be a stretch to interpret Dr. Tracy's statement, as Plaintiff suggests, to mean that Plaintiff is unable to perform any competitive work at all.

Tracy's finding that "disability status is warranted" while assigning some weight to Dr. Tracy's opinion and examination findings to the extent his opinion and findings indicate Plaintiff is capable of unskilled work. (R. at 28). Indeed, the ALJ recounted at length Dr. Tracy's examination findings regarding Plaintiff's mental functioning. (R. at 27–28). But the ALJ was entitled to *discount* Dr. Tracy's opinion on Plaintiff's disability status because "opinions on disability are not medical opinions and are not given any special significance." *Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 251 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)(1) & (3)).

To the extent that Plaintiff argues the ALJ should have recontacted Dr. Tracy, we find this argument unpersuasive. Under the applicable Social Security regulation,

> [O]ur rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96–5p.[6]

As such, the ALJ was not required to recontact Dr. Tracy. First, Dr. Tracy was not a treating source—a fact that Plaintiff admits. (Pl. Br. 18) ("Plaintiff does not argue that Dr. Tracy necessarily qualifies as a treating source."). Second, the basis for Dr. Tracy's opinion as to Plaintiff's disability status is clear: the doctor concluded that Plaintiff was disabled because she is unable to perform her past work as a counselor or work at a comparable level of skill—a conclusion that the ALJ agreed with. (R. at 801). As the ALJ correctly noted, "this is not the standard for disability under the Social Security Act." (R. at 28). Third, recontact "is necessary only when the evidence received is 'inadequate' for making a disability determination" which is

---

[6] Subsequently enacted regulations have modified SSR 96–5p, such that "recontacting a medical source is now discretionary" rather than mandatory. *Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 787 n.8 (3d Cir. 2016) (citing 20 C.F.R. § 404.1520b(c)–(d)).

not the case here. *Bryson v. Comm'r Soc. Sec.*, 639 F. App'x 784, 787 (3d Cir. 2016). Here, the ALJ considered multiple medical source opinions, lay statements, Plaintiff's testimony, and Plaintiff's medical records in rendering her decision as to Plaintiff's disability status. Accordingly, we find no error in the ALJ's decision not to recontact Dr. Tracy.

### ii. Dr. Libon

Plaintiff next claims that the ALJ erred by rejecting Dr. Libon's opinion. In fact, as with Dr. Tracy, the ALJ assigned some weight to Dr. Libon's opinion "in support of a finding that the claimant is limited to unskilled work …" but afforded little weight to Dr. Libon's suggestion that Plaintiff was entitled to disability as "[t]his is a medical-vocational determination reserved solely for the … Commissioner." (R. at 24–25). Plaintiff contends that the limitations indicated by Dr. Libon's test results "go beyond the ALJ's RFC, and the ALJ does not explain her rationale for rejecting the testing-based results." (Pl. Br. 19).

But Plaintiff does not explain how Dr. Libon's tests results "go beyond the ALJ's RFC," noting only that certain results "indicate serious impairment in the ability to function" and "would lead to greater impairment than allowed." (Pl. Br. 19). The ALJ accurately recounted Dr. Libon's opinion and concluded that it supported a finding that Plaintiff was limited to unskilled work, but still capable of some gainful work. (R. at 24–25). By contending that the ALJ erred, Plaintiff is effectively asking the Court to reweigh Dr. Libon's findings—something we cannot do. *Michael Edward Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 174 (3d Cir. 2016) ("A court may not weigh the evidence or substitute its own findings for the Commissioner's.") (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986)).

### iii. Dr. Morgan

The ALJ discounted Dr. Morgan's opinion that Plaintiff would be off task more than 25% or more per workday, as well as his conclusions that Plaintiff requires one and a half to two hours of supine rest daily and would miss more than four workdays a month due to fatigue. (R. at 28–29). The ALJ did so because Dr. Morgan's opinion appeared to be based solely on Plaintiff's subject complaints and was inconsistent with the objective medical evidence as well as Plaintiff's substantial daily activities. (R. at 29). Plaintiff argues that the ALJ did not identify what, if any, evidence in the record is inconsistent with Dr. Morgan's opinion, (Pl. Br. 19–20), and ignored important portions of Plaintiff's testimony and the record that lend support to Dr. Morgan's opinion, (Pl. Br. 20–21).

"[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record." *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59 (3d Cir. 2017) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001)). Here, substantial evidence in the record contradicts Dr. Morgan's findings regarding Plaintiff's ability to stay on task and Plaintiff's related claims of chronic fatigue. For example, the ALJ assigned significant weight to the opinion of Dr. Coffey and the State Agency psychological consultants to the extent those medical sources that Plaintiff's pace and persistence was adequate. (R. at 26–27). Dr. Coffey also found that Plaintiff's mental symptoms were not so severe as to "interfere with [Plaintiff's] ability to function in a consistent manner." (R. at 26). In addition, the ALJ emphasized that despite Plaintiff's subjective complaints of memory problems, formal intelligence tests did not support the extent of cognitive impairment that Plaintiff alleged. (R. at 32). The fact that Plaintiff was able to engage in work activity, albeit on a part-time basis, in 2014 and 2015 also supported this conclusion. (*Id.*). And while Dr. Morgan's treatment notes consistently documented Plaintiff's reports of "memory problems" due to chemotherapy, (R. at

605–25, 637), the ALJ noted that Dr. Morgan did not formally evaluate Plaintiff's mental capabilities or provide any treatment for Plaintiff's mental symptoms, (R. at 32).

Moreover, Plaintiff's own testimony regarding her daily activities is inconsistent with Dr. Morgan's opinion that Plaintiff would require over an hour of supine rest daily. Plaintiff testified that she goes to the grocery store, (R. at 60), walks her dogs (R. at 80), runs errands (R. at 85), gardens, (R. at 86), and cooks (R. at 86). She exercises for up to an hour two to three days per week, using the treadmill and doing strength training. (R. at 85). Only once in Dr. Morgan's treatment notes does he mention Plaintiff's complaints of fatigue, and this involved treatment that occurred in October 2016—outside of the relevant period. (R. at 871). Indeed, Dr. Morgan's treatment notes from 2009, mere months after Plaintiff's chemotherapy ended, reveal that Plaintiff was "very active" during this time. (R. at 638, 642).

Additionally, as the ALJ asserted, Dr. Morgan's conclusions appear to be based entirely on Plaintiff's subjective complaints regarding the extent of her memory/cognition issues and fatigue, which the ALJ found were "primarily unsupported" by the evidence. (R. at 32); *see Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003) ("An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted."). As such, the ALJ did not err in her assessment of Dr. Morgan's opinion.

### iv. Dr. Aliferova

The ALJ gave little weight to Dr. Aliferova's opinion that Plaintiff would be off task 25% or more during a workday, "because [the doctor] merely checked boxes and circled answers on a form without any supporting explanation…." (R. at 30). The ALJ also asserted that Dr. Aliferova's opinion was inconsistent with objective medical evidence, including the doctor's

own treatment notes, and Plaintiff's daily activities. (R. at 30). Further, the ALJ noted that Plaintiff's "psychological issues" are "beyond the scope of Dr. Aliferova's practice or treatment of the [Plaintiff]." (R. at 29).

We find that the ALJ did not err in affording limited weight to Dr. Aliferova's opinion. Plaintiff asserts that the ALJ could only justify rejecting Dr. Aliferova's opinion "by ignoring the Plaintiff's explanation as to her daily activities and ignoring broad swaths of testimony showing that she is limited for hours after attempting activity and required unscheduled breaks at work due to fatigue and other symptoms." (Pl. Br. 22). However, contrary to Plaintiff's assertions, Dr. Aliferova did not indicate that "fatigue" was one of Plaintiff's symptoms in her medical source statement; when asked whether it is reasonable for Plaintiff to typically need supine rest (lie down or recline) for at least a total of 1 ½ to 2 hours during the day, Dr. Aliferova responded "not at all." (R. at 845–47). Further, as the ALJ noted, Dr. Aliferova's treatment notes contain no reference to Plaintiff's fatigue or any other functional limitations. *See, e.g.*, (R. at 831–44).

While a treating source's opinion is typically entitled to great weight, an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. And while Plaintiff asserts that merely writing in Plaintiff's diagnoses removes Dr. Aliferova's statement from the realm of a "checkbox" opinion, we disagree. (Pl. Br. 22). Dr. Aliferova did not include meaningful supporting explanations to explain the basis of her off-task conclusion and the ALJ was entitled to discredit her opinion for that reason. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

### v.  Dr. Wagner & Dr. Knod

Plaintiff argues the ALJ erred in discounting Dr. Knod and Dr. Wagner's opinions on the basis that these opinions were rendered after Plaintiff's last date insured. (Pl. Br. 23–26, 28–29). The ALJ assigned "little weight" to Dr. Wagner's non-contemporaneous opinion, despite retroactively attributing his assessment, because his personal observations of Plaintiff occurred almost a year after the relevant period, making them "considerably less persuasive." (R. at 30). The ALJ also afforded "little weight" to Dr. Knod's functional evaluation, concluding that the "functional limitations that [Dr. Knod] offers is [*sic*] primarily premised on his 2018 observations of the claimant, which are entirely irrelevant to determine whether [Plaintiff] was disabled between August 2008 and December 2015." (R. at 31). The ALJ also noted that the fact that Dr. Knod did not review any "objective medical evidence" regarding Plaintiff's functional capabilities from the relevant period itself "significantly undermine[d] [Dr. Knod's] belief that [Plaintiff] had limitations consistent with [Dr. Knod's] opinion since 2008. (*Id.*).

Plaintiff correctly asserts that an ALJ should generally consider non-contemporaneous evidence that bears on a plaintiff's claim of impairment during the relevant period. SSR 18-1p; SSR 83-20; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003). However, we find no error in the ALJ's evaluation of Dr. Wagner and Dr. Knod's opinions in the instant matter. Plaintiff's reliance on our decision in *Murphy v. Colvin* is inapposite.[7] No. CIV. 13-5508, 2014 WL 6065749, at *1 (D.N.J. Nov. 12, 2014). Both *Murphy* and *Newell* involved situations where an ALJ refused to consider a claimant's impairment at Step Two because of the lack of contemporaneous evidence of that impairment during part or all of the relevant time period. *See*

---

[7] As a preliminary matter, *Murphy* involved an application of SSR 83-20, 2014 WL 6065749, at *18, which "provides ALJs with an analytical framework for determining a disability onset date[,]" *Newell*, 347 F.3d at 548. SSR 83-20, and subsequently replaced by SSR 18-1p, is less applicable where the ALJ is determining whether a Plaintiff is disabled in the first place. *Zirnsak v. Colvin*, 777 F.3d 607, 613 (3d Cir. 2014) ("The purpose of … SSR 83–20[] is to 'describe the relevant evidence to be considered when establishing the onset date of disability,' not whether disability exists." (citing SSR 83-20)).

*Newell*, 347 F.3d at 547; *Murphy*, 2014 WL 6065749, at \*18. Indeed, we found in *Murphy* that it was remandable error for the ALJ to "reject a retrospective opinion solely because there are no contemporaneous objective medical findings or evidence to support the opinion." *Murphy*, 2014 WL 6065749, at \*16.

Here, there is ample contemporaneous evidence of Plaintiff's impairments and the severity of those impairments throughout the relevant time period. *See* (R. at 473–78, 605–25, 637, 646, 721, 789–94, 796–802, 831–44). Therefore, the ALJ could properly discount Dr. Wagner and Dr. Knod's non-contemporaneous medical evidence, particularly as those opinions relied on the same medical opinions that the ALJ considered and, for various reasons, afforded little weight in her RFC analysis. *See Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (3d Cir. 2008) ("[W]e have generally applied SSR 83–20 only where medical evidence from the relevant period is unavailable."); *Maxwell v. Comm'r of Soc. Sec.*, No. CV 19-8687, 2020 WL 3097532, at \*8 (D.N.J. June 11, 2020) ("[T]he existence of ample medical evidence from the relevant time period diminishes the probative value of non-contemporaneous exhibits."). Thus, we find no error in the ALJ's decision to afford little weight to Dr. Wagner and Dr. Knod's non-contemporaneous opinions.[8]

### vi.  Lay Statements

Plaintiff objects to the ALJ's decision to accord "little weight" to the two lay statements submitted in November 2016. (R. at 30–31). The first lay statement was provided by Plaintiff's sister, (R. at 412–13), and the other by Plaintiff's longtime friend, (R. at 436–37). In rendering her decision, the ALJ afforded little weight to these statements because they (1) were offered by non-medical sources and appeared "considerably" subjective; (2) were based on casual

---

[8] Because we find that the ALJ provided an adequate rationale for discounting Dr. Wagner and Dr. Knod's opinion, we do not reach Plaintiff's other arguments regarding the ALJ's evaluation of these opinions. (Pl. Br. 24–25, 29).

observation; (3) "lack substantial support from objective findings and appear to be medically inconsistent with the medical evidence of record"; and (4) appeared to be contradicted by the claimant's own testimony and activities of daily living. (R. at 31). The ALJ also suggests that Plaintiff's sister's opinion could have been "influenced by loyalties to family." (*Id.*). Plaintiff contends that the ALJ's reasoning was "conclusory and inappropriate[.]" (Pl. Br. 27).

We find that the ALJ's first two reasons for rejecting the lay statements were improper. Lay statements, by nature, are offered by non-medical sources, subjective, and based on casual observation rather than medical testing. Nonetheless, lay statements should be properly considered as evidence in a social security case. *See* SSR 06-03p; *see also* SSR 16-3P ("Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include … non-medical sources such as family and friends …."). An ALJ cannot reject a lay statement outright simply because the statement comes from a non-medical source.

However, the ALJ also reasoned that the lay statements in this case were inconsistent with the objective medical evidence and Plaintiff's testimony and daily activities.[9] (R. at 31). The ALJ found the lay statements unpersuasive for the same reasons that she found Plaintiff's own allegations regarding the extent of Plaintiff's limitations to be unpersuasive and noted that the lay statements are inconsistent with Plaintiff's "generally functional activities of daily

---

[9] Even if the ALJ had erred in her evaluation of the lay statements, as Plaintiff contends, remand is still not appropriate here because Plaintiff has not shown the error was harmful. *Cf. Butterfield v. Astrue*, No. 06-0603, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) ("In many cases, courts have found that an ALJ's failure to address lay opinion testimony, although technically in violation of applicable legal standards, did not require remand since the testimony would not have changed the outcome of the case.") (collecting cases). As the ALJ noted, the lay statements are largely cumulative of Plaintiff's own testimony, which the ALJ adequately considered. *See Buffington v. Comm'r of Soc. Sec. Admin.*, No. CIV. 12-100, 2013 WL 796311, at *9 (D.N.J. Mar. 4, 2013) ("Because [the lay] testimony is largely cumulative of Plaintiff's own testimony, which the ALJ expressly found not credible, [the lay] opinions do not have a significant effect of the outcome of the case.").

living[,]'" which the ALJ recounted in detail earlier in her decision. (R. at 20–24, 31). As the ALJ provided adequate reasons for discounting the lay statements, remand is not needed. *Cf. Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 122 (3d Cir. 2020) ("The ALJ discounted [the plaintiff's] mother's reports because they were inconsistent with the previously discussed objective medical evidence and medical opinions. This reason was sufficient by itself to support the ALJ's decision.").

### C.  Plaintiff's CVA & Hospitalization

Last, Plaintiff contends that the ALJ incorrectly characterized Plaintiff's hospitalization related to her CVA as brief, lasting only from June 28-29, 2000. (Pl. Br. 30–31). Plaintiff asserts that she was actually hospitalized for a much longer period of time, starting in January 2000. (*Id.*). Though the record does not make clear Plaintiff's precise dates of hospitalization in 2000, *see* (R. at 544), this is no matter.[10] It is undisputed that any such hospitalization occurred eight years prior to Plaintiff's alleged disability onset date—well before the relevant period. Plaintiff does not indicate how the ALJ's alleged mistake with regards to the length of Plaintiff's hospital stay eight years prior impacted the RFC calculation in this case or, conversely, how the ALJ's recognition of a lengthy hospital stay would have changed the outcome of this case. *Cf. Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[R]emand is not required here because it would not affect the outcome of the case."); *Bivins ex rel. N.B. v. Astrue*, No. 5:11-CV-51, 2011 WL 5859954, at *5 (M.D. Ga. Nov. 22, 2011) (unpublished) ("A remand to have the ALJ perfect the record as to this statement would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources."). Plaintiff offers only speculation, stating "[i]t is unclear whether, had the ALJ known that the Plaintiff's

---

[10] The record does not make clear precisely when or for how long Plaintiff was hospitalized in 2000. *See* (R. at 463–68, 544) (stating only that Plaintiff was hospitalized on January 30, 2000, transferred to Thomas Jefferson University Hospital the next day, and then "eventually went to a rehabilitation.").

CVA and resulting inpatient treatment that was far more involved than a simple one-day stay, and in fact was lengthy and significant, would have impacted her rationale." (Pl. Br. 31).

Further, in analyzing Plaintiff's CVA, the ALJ emphasized that Plaintiff was able to return to substantial gainful activity until 2008 following her 2000 hospitalization. (R. at 23). This fact is true regardless of whether the Plaintiff was hospitalized for two days or several months. As such, we find that any error the ALJ made with respect to the length of Plaintiff's hospitalization was harmless and does not require remand.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for benefits is **AFFIRMED**. An Order follows.


Dated: <u>12/28/2021</u>                          <u>/s/ Robert B. Kugler</u>
                                                  ROBERT B. KUGLER
                                                  United States District Judge